The PRESIDENT
delivered the opinion of the Court.
The principal questions made in this cause were: 1st, what estate the sons Robert and Theoderick took in the lands devised to them : whether in fee simple or for life only? If the former, then the appellees have no title; if the latter, then
2d Whether the reversion in those lands passed under the residuary clause to the wife and daughter, or was undisposed of, and descended to the heir; and this latter supposition if true will be equally fatal to the title of the appellees.
For the appellant it is insisted that the fee passed to the sons.
1st Because the testator’s debts are by the first clause in the will, charged upon the lands, and that this is sufficient to enlarge an estate, not given expressly for life, into a fee. That justice requiring, that all a man’s property should be subject to the payment of his debts, slight words in a will, are sufficient to create a charge upon lands for this purpose, where the debts cannot otherwise be paid: cases cited Cas. Temp. Talb. 110 Free. Ch. 430.
If this were a case between creditors, and the devisees of the lands, I think that such a construction would be made.
But a charge which is by construction to give a fee in lands devised, seems to stand upon other ground. It must be direct charge of a sum in gross, either upon the lands devised, or upon the person of the devisee, however small the sum may be; for life being precarious, it might end before any part of the money were raised, so as to render that onerous, which was intended to be beneficial to the devisee. 3 Burr. 1533 — 1618 Cowp. Rep. 352.
If the money charged be to be raised by rents and pirofits, or if the land be made liable only upon the event of the personal estate becoming deficient, a fee will not be created; because in neither case can the devisee be a loser by taking an estate for life. 3 Cowp. Rep. 236.
*The will now under consideration directs the testator’s debts to be paid by his executors, without prescribing the mode, and contains no words exempting the legal fund, and charging them upon the lands or upon the persons of the devisees — so that the resid-uarj' estate is alone burthened with them, and the lands in question can only be resorted to, as an auxiliary fund, to make up the deficiency — and as an application for that purpose could only be made by the creditors, there seems to rqsult from considerations of this sort no necessity to create a fee in the devisees.
2d, It is insisted that a fee was intended to pass, because in the preamble of the will, the testator declares an intention to dispose of his whole estate; and when he devised lands to his sons generally, without limiting the duration of their tenure, he meant to give it absolutely. That if so, the court, rather than disappoint that intention, will carry the word estate, from the preamble, to each devise, so as to make the clause in question read thus: “ as to my estate in the land at Ochaneachy, I give it to my son Robert,” &c.
The counsel on the other side admit, that the testator’s intention is to be the rule of decision; but with this restriction, that it is to be collected from the words of the will itself — and that it must consist with the law and settled rules of construction: that the rule, in common law conveyances “that where lands are conveyed without limiting any estate, they only pass for the life of the grantee,” extends equally to wills, unless the testator use some words expressing his intention to pass a larger estate: that none such are to be found in this will, unless it be the word estate, in the preamble; which cannot have that effect, according to a late determination in the case of Wright and Wright &c., 3 Wils. 414.
To discover what is comprehended in the residue, we must view and discuss the preceding bequests, to ascertain what he has disposed of, and what remains undisposed of, for the word rest to act upon. But I would first premise, that we disclaim all legislative power to change the law, and only assume our proper province of declaring what the law is: we disclaim all authority to mould testator’s will into any form which fancy, whim, or worse passions, might suggest; we regard his own words, and compare them with his circumstances, and the relative situation of the devisees. So far we approve of Mr. Fearne’s general reasoning, tho’ we may not accord with him in another assertion: namely, “that legal rules of construction ought not to-yield to the intention of ignorant testators:” since it is on account of that ignorance, -"that their words are to be taken in the sense in which such men commonly use them, and not in that technical sense affixed to them by professional men. In Hodgson v. Ambrose, Dougl. 323 — a distinction is made which seems to be a sensible one, to wit: if the testator use legal phrazes, his intention should be construed by legal rules. If he use th^se that are common, his intention, according to the common understanding of the words he uses, shall be the rule.
The apparent clashing of the cases relied upon in this discussion, induced the court to trace the subject to its foundation, to see if they could discover a principle so certain and uniform, as to direct a satisfactory decision either way.
When upon the adoption of the feudal system in England, an arrangement was made of the various tenures by which lands were to be holden, the mode and form of' creating each of them was pointed out, and the power of each particular tenant over his. estate settled: it was natural to suppose that their technical forms would not always be attended to, and therefore it became- *430 necessary to provide a rule for cases, where the duration of the estate was not described.
Common sense would have dictated, that an absolute estate should pass by a conveyance unlimited as to duration, and containing no provision' for its return to the grantor, at a future period, or on a contingency. But reason was made to yield to the spirit of a system, unfriendly to alien-ations, or divisions of lands: and therefore, the rule that such conveyances passed only an estate for life, was established. The same spirit established the rights of primogeniture, and, (aided by the statute de donis,) permitted estates tail, and all lesser estates to be carved out of the fee simple; the residue ultimately continuing in the grantor, capable of being disposed of when the paticular estates should be ended. This disposition gave what was called a remainder in fee — -but it often happened, that the fee was not disposed of; and generally in such cases, as this now before the court, when that fee rested in the donor as part of the old estate, it acquired the character of a reversion, and descended to the heir at law.
This spirit of the feud, is mentioned, as explanatory of those rules of construction, which, in favour to the heir at law, narrow as much as possible the operation of all conveyances, calculated to disinherit him.
By the American revolution, and some of our laws, we have happily got rid of the feudal system, and the *rights of primogeniture; so that the favour hitherto claimed by heirs at law in the construction of conveyances affecting their rights, will no longer be heard of, in cases happening after January 1787, when those laws took effect: but the intention of testators will become in reality the rule, which, though hitherto avowed to be such, hath been so refined away as in many instances to have been sacrificed to rigid technical terms.
However it may be as to such new cases, the present, as well as all others which may come before us, arising at a prior period, must be decided according to the law of that time, as far as we are enabled to discover it.
A general observation may here be made: that all the legal artillery now played off against the heir, was furnished by the above mentioned bias, to fortify his title; but if it may be thus turned against him by the rules of legal warfare, we cannot help it: we have only to enquire, if it do defeat him or not.
The feudal Rule “that where an estate was conveyed without limitation, no more than an estate for life passed, and the reversion descended to the heir,” acted for a long time merely on feoffments and grants, the only conveyances then in use; and in such, the rule has constantly prevailed.
But it may be remarked, that as the personal wealth of the nation increased, a desire in the rich commoners,-to realize their money, produced a new contending spirit, averse from perpetuities of land in the same families, and favorable to alienations.
It was this spirit which enabled Henry the 7th to gratify his wish of lessening the power of the Barons, by introducing the fictitious fi'ne and recovery, as an effectual bar of estates tail, and all remainders and reversions depending upon them, and this became a new and common mode of conveyance.
The same spirit operated more powerfully in the next reign, producing the statute of uses, the parent of conveyances by lease and release and giving new vigor to covenants to stand seized to uses. This, and the statute of inrolments, gave rise to bargains and sales for money; and finally the statute of wills enabled proprietors of lands to dispose of them, by their last wills at pleasure.
These new statutory conveyances received a much more liberal interpretation, to favor the intention of the parties, than were indulged to those at common law, but which need not now be mentioned.
*In the construction of wills (more particularly,) an extensive latitude has been allowed, on account of the extremity, in which they are often made, not admitting of counsel being called in, but inducing the necessity of resorting to any person, however unskilful, who may be at hand. And it is not improbable, that the respect which all me'n have agreed to pay to the will of the dead, might have had considerable influence.
That the intention of the testator is to give the rule of construction, is declared by all the judges both ancient and modern. Bd. Holt and some others more modern, emphatically call that intention, the Polar Star, which is to guide our decision — and in a late case of Hodgson v. Ambrose, Dougl. 323, the court say, that this is the governing rule, to which all other rules of construction must yield.
If this were a new question, I believe there would be no great difficulty in deciding, that the rule, which prescribes technical terms for the passing of different estates in common law conveyances, did not extend to wills at all; since no such terms were prescribed to testators, by the statute of wills, which enabled them to dispose of their lands at pleasure. But the judges, after laying down the true rule built upon intention, unfortunately admitted, that if there were no words of limitation, the common law rule must prevail; by which they tied a gordian knot, which they have since struggled to unite. It would have been better if they had cut it at once.
This rule however of construing wills according to intention, is laid down with some limitation, as 1st, The disposition, intended to be made, must not conflict with the rules of law: which I . understand as applying to restraints upon the creation of perpetuities, devises in Mortman, and the like; and of course, it has no influence upon this question.
*431 2d, The intention must be collected from the will itself.
This is true, if we admit those words to be explained by the relative situation of the parties, and the circumstances of the testator; which, a multiplicity of cases prove, ought to be considered. Thus explained, this limitation will be regarded.
3d, The intention is not to prevail against settled and fixed rules of construction.
If we could discover those settled rules of construction, we would pursue them. But, after all our researches, we are much inclined to arfirm what is said by judge Wil-mot in Baddeley v. Leppingwell, 3 Burr.
1533. “that cases on wills serve rather *to obscure, than illuminate questions of this sort;” in which the present may be classed. So it is said by the court, in Jeffereys v. Poyntz. 3 Wills. 141. “That cases on wills may guide as to general rules of construction, but, unless a case cited be in every respect directly in point, and agree in every circumstance, it will have little, or no weight with the court, who always look upon the intention of the testator as the polar star to direct them in the construction of wills.”
The appellees, in applying this objection to the present case, insist upon it as a settled rule of construction, that where lands are devised without limitation, and no words are used to shew an intention to give a fee, the rule of law that only an estate for life passes, preyails. And this is laid down as a general position by most of the judges, who speak upon the subject: but from their manner of expression, and from their application of it to particular wills, it w'ill appear to have but little influence upon their decisions.
In Bows v. Blacket, Cowp. Rep. 236, a singular decision is made. It was a devise, “of all his freehold and leasehold lands, and all his estate and interest therein to his wife for life,” remainder to two sisters as tenants in common, chargeable with the payment of debts and legacies; and it was determined that only an estate for life passed to the sisters.
In the case of Mudge v. Blight, Cowp. Rep. 352. lord Mansfield says, “I really believe that every case determined upon the rule of law, directing an estate for life, if there be no limitation, defeats the intention of the testator.”
To the same purpose is judge Buller, in Palmer v. Richards, 3 Durnf & East 356. “There is hardly a case of this sort, where only an estate for life is held to pass, but that it counteracts the testator’s intention: for where a testator uses general words he means to dispose of every thing he has.”
When therefore we find judges declaring that the intention of the testator is to be their guide, and that the rule of law now insisted on violates that intention, (as I believe all mankind will agree it does, for the reason given by judge Buller,) it is no wonder, that we find them constantly declaring, that tho’ the rule must prevail if there be no words to controul it, yet no technical terms are necessary, but they will lay hold of or (as some express themselves) will catch at any slight expressions, and make them answer the purpose.
*At first indeed, they went no farther, than to supply the omission of the word heirs, necessary to give an inheritance in common-law conveyances, by other words tantamount to it. Such as to him and his assigns, to him and his seed, to him forever, to him and his-and such like.
But in the progress of their struggle for the intention, against this rigid, unjust rule of law, they went further, and made various other words answer their purpose.
It was in this manner that the word estate was taken into the service, which in its vulgar and common meaning, is descriptive only, of the quality of things: as land &c. and not of the interest in them. Yet to serve this beneficial purpose, they have given it a more extensive signification, so as to make it comprehend as well the thing as the testator’s interest in it; and so to pass a fee, which it would no more do in common-law conveyance ; than if there were no limitation whatever. For tho’ lord Holt in the case of the countess of Bridgewater v. the Duke of Bolton, 1 Salk. 236, says ‘ ‘the word estate is genus generalissimum, and comprehends both the thing and the interest, ” yet that was in a case of a will; and lord Mansfield in Mudge and Blight before mentioned, expressly says, “It was on the ground of the judges laying hold of any expression to favor the intention, that a devise of all one’s estate, or of all his estate at A, passed a fee.” See also 2 Ed. Ray. 31 — • 1 Salk. 234.
In the case before us, in the devises to his two sons, he gives to Robert all his land at Ochaneachy island and Finney wood; and to Theoderick all his lands at Cargills, without any words of limitation whatever. The word estate is not used in the devise, nor are there any other expressions, indicating an intention to give a fee.
But it insisted upon at the bar, 1st, That his intention is apparent from the relative situation of the testator, with the several devisees; since he could not intend to disinherit the grandsons who were to bear his name in favor of the issue of a wife and daughter.
It must be confessed, that such an intention would make the testator invert the order of every family provision; giving sons only an estate for life in lands, for whom perpetuities would generally be created, if not restrained by law, and instead of a present provision for a wife, give her a reversion after estates for life to her infant children ; from which she could expect no benefit, tho’ her issue by a second husband, might take the estate from the testator’s grand-children. ■
*To suppose such an intention in the testator is absurd in the extreme, and I am persuaded, that there is no person who believes he so intended it.
*432 2d, The counsel then insisted that rather than disappoint this apparent intention, the court will carry the word estate from the preamble, to each clause in the will, so as to bring the case within the rule, that a devise of the estate passes a fee.
In opposition to this, Wright & Wright, 3 Wils. 414 is cited, an.d relied upon, as being not much unlike the present case.
In this case, the testator sets out' thus, “As touching my temporal estate, I give ana dispose thereof as followeth: my debts to be paid. — Item: I give to my nephews Henry and Nathan a house at Heeds, &c. Item: I give to my nephew William two houses at Seacroft,” &c. After giving a number of small pecuniary legacies, he adds. “It is my will that none of the houses, &c. be entered into, ’till after the death of my executors,” — and makes his brother executor. It was determined, that only estates, for-life passed to the nephews in the houses; and chief judge De Grey declared, that there was no case where the testátor makes use of these or the like words, “as touching the disposition of all my temporal estate, I give and dispose .tnereof as followeth,” and immediately afterwards devises his several estates or his several lands to divers persons, that ever a fee was determined to pass. That by the words, all my estate, he must be understood to mean the thing (his lands) and not the quantity of estate, (the fee).
This is a case in point, and rather stronger, since an argument in favor of a fee might there have been drawn from the reservation to the brother for life, and if this case is of conclusive authority, it will put an end to this part of the dispute.
But 1st, Does not this case lose its weight by proving too much? For it lays down the principle, that a devise of lall the testator’s estate, means the thing only, and not his interest; from which it would follow that by such a devise, a fee would not pass, contrary to the whole string of adjudications, from Lord Holt down to the present day.
2d, If the assertion of the chief justice “that there is no case where the word estate, in the preamble, had been adjudged to give a fee in lands afterwards devised without limitation,” be true, then this single case might decide the present; but if it shall appear to be unfounded, it will evince the decision to have *been made without due consideration, and the authority of the case must be given up.
The cases cited upon that occasion were Hob. 65, — 1 Salk. 236, — 1 Vern. 85, — Prec. Chan. 264, -2 Vern. 690, — 3 P. Wms. 295,— Cole v. Rowlinson, 1 Salk. 234, was also cited —In this case nothing is said about the preamble,'but the devise being of all the testatrix’s estate, right, title and interest, in whatever he held by lease from sir John Freeman, and also the house called the Bell tavern, of which she had only the reversion in fee after an estate tail in the son, to whom she devised it; the whole was considered as one sentence, tied together by the word also, and therefore the word estate as carried to the devise of the Bell tavern so as to pass a fee.
1 Salk. 236 does not apply, for there the word^state was in the devise and not in the preamble.
The case of Murray v. Wise, Prec. in Chan. 264, is susceptible of the same answer.
In Beachcroft v. Beachcroft, 2 Vern. 690, the preamble is stated and referred to by the lord Chancellor, when he says, “my worldly estate comprises all he had in the .world real and personal.” This however is not material, since the word estate is used in the devise itself. But this hint, probably gave rise to the idea of looking to the preamble for aid, in this pious work of fulfilling the will of the dead.
3d P. Wms. 294, Tanner v. Wise, turned upon the question wheter the real estate was comprehended in a devise after personal bequest, of ‘ ‘all the rest of his estate, goods, and chattels whatsoever, real and personal, to his wife. ”
Here the word estate in the devise being explained by goods and chattels would naturally mean personal estate; nor would the words real and personal help it, as there might be chattels real. Recourse was therefore had to the preamble, in which he declared his intention to dispose of all his temporal estate, which the counsel for the heir insisted more properly applied tq personal estate, and leases for years, which were in their nature temporary, and would wear out in time, than to permanent real estate. Lord Chancellor referring to the preamble also, says “temporal estate means the same as worldly estate, or all a man has in the world real or personal, and adjudged that the real estate passed to the wife, and in fee.
In this case also, the Chancellor furnished an instance of incorporating the words of the preamble with the devise. He sajrs, “rest and residue are words of relation, and must refer to some estate mentioned before.” Now here was an estate mentioned “before his temporal estate, which brought it to signify the same as if he had said “I devise the rest and residue of all my temporal estate.”
This case alone might have made the chief justice pause at least, before be made the bold assertion now under consideration. But there are others much stronger. — Ibbetson v. Beckwith, Cas. Temp. Talb. 157, was this: the testator in the preamble declares “as touching my wordly estate, I dispose of the same in manner following: to my sister Mary Beckwith, all my estate at H. in hither dale, leasing at Crew, and all my estate at Cubeck, paying and discharging all legacies before charged by my father’s will. To my loving mother all my estate at Northwith-close, North-closes, and my farm at Roomer with all my goods and chattels for her life; and to mv nephew Thomas Dodson after her death, if he will change his name to Beckwith; if not, I give him ^20 to be paid him for life, out of *433 the closes, and farm, which I give her, upon that refusal, to her and her heirs forever.”
The question was, if Thomas took a fee in that which was devised to him, after the death of the mother, or onljr an estate for life?
The word estate is in the devise to the mother, but must be descriptive of the thing, and not of the interest, because it is his estate at Northwith-close, which means the same as my houses or lands at those places: and though the Chancellor cites some cases, to prove that a fee will pass by a devise of all his estates at, or in .such a place, the point is certainly very disputable, and there are many express cases to the contrary. However, those he mentions may serve to show the growing influence of the testator’s intention over rigid rules of construction : another reason why it must be descriptive of the thing, and not of the interest, is, that it is given to the mother for life.
However, the case is mentioned for the sake of Lord Talbot’s reasoning on the preamble, enforced in his usually clear and perspicuous manner. He says, !iin order to come at the testator’s intent, the whole complexion of the will has been properly taken into consideration on both sides. 'The words, worldly estate, in the preamble, prove him to have had his whole estate in view. Indeed he might have made but a partial disposition afterwards; but if the will be general and taken in one sense, it will make a complete disposition of the whale, and in another will create a chasm, and leave a part undisposed of; that sense shall prevail which is agreeable to his intention to dispose of the whole.”
*To apply this to the present will, which has the same declaration in the preamble. — Has the testator made but a partial disposition of the lands to his sons? The feudal law says so, but he does not, since he gives it to them without restraint, or direction that their estate shall cease at any fixed period, or on any event. Is not this the very case Bd. Talbot puts, of a testator using general words, which he says shall be so construed, as to pass a fee; because that will best agree with his intention declared in the preamble, to dispose of the whole? So far the case may not apply strongly, as there is no residuary clause, and the word estate is in the devise.
In Grayson v. Atkinson, 1 Wils. 333, the testator, after declaring in the preamble his intention to dispose of all his temporal estates, devises several legacies, amongst others to A. and having empowered him to sell all, or any part of his real or personal estate, for payment of his debts and legacies, adds, “as to all the rest of my goods and chatties, real and personal, moveable and immoveable, as houses, gardens, tenements, my share in the copper works, &c. I give to the said A.”
The question was, if A. took a fee, or a life estate only in the real estate? Here were no words of limitation, nor was the word, estate, used in the devise, which was of houses, gardens, and tenements, and the preamble must be referred to, for that important word. Bord Hardwicke doubted at first, and had he as hastily decided as chief justice De Grey did, he might also have pronounced that the word estate had never been so used or applied, and adjudged it only an estate for life. But he searched for, and examined the principles of the cases ; and then said, he was clear in his opinion that a fee passed; and his first and third reasons inform us of the ground of his conviclion, which was the cases of Beachcroft & Beach-croft, Tanner and Wise, and Ibbetson and Beckwith; particularly the last, for he repeats Bd. Talbot’s reasoning, drawn from the word estate in the preamt le. He mentions another reason which no doubt had some influence, namely, that the estate was charged with, and might be sold for the payment of debts and legacies. But this I consider as the weakest argument, and placed by him, (as such generally are) in the middle, between the two stronger ones. Bor his power to sell was in a distinct devise, which he might exercise at all events, so as to be no looser, whether he took an estate in fee, or for life only, in the residue.
The cases o'f Coghill and Noel in the old General Court, and Halstead v. Halstead, may also be here mentioned.
*If this were a new case, I should feel no hesitation in declaring it as my opinion, that the rule as applied to common law conveyances, did not extend to wills; since the statute respecting them, allows men to dispose of their lands, not by any technical terms but at their will and pleasure. But since we have precedents to follow, I have no difficulty in thinking myself warranted by the opinions of those great men Bd. Cowper, Bd. Talbot, & Bd. Hardwicke, to say, that by connecting the word estate in the preamble, with the devises to the two sons, a fee simple estate passed to them in the lands; which will fulfil the will of the dead, and settle the peace of the family; and it is for this purpose, that the point has been so thoroughly investigated and discussed — yet as the cases of Dean v. Gaskins, referred to in Mitchel v. Sidebottom Dougl. 759 as well as the principal case, and that of Wright v. Wright are in opposition, the point is left undetermined. — Dor as to the present question, let this point be determined the other way, it will not warrant a recovery against the heir.
1st, Because he will take by descent, and not under the will: and 2d, because the reversion in neither of the sons lands will pass by the residuary clause.
1. The rule is, that where the testator makes the same disposition to the heir which the law would have made, or where it is made in such general terms, that the intention is left doubtful, the heir shall take by descent, as his better title, and not under the will. 2 Bac. 79— Mod. Ca. Law. & Eq. 23, 1 Ld. Ray. 728.
*434 Here is a devise of lands to the heir, unlimited as to estate; unincumbered with any charge, and therefore it amounts to no more than pointing out the lands which his heir should take by descent. • . i i
In Smith v. Triggs 1 Str. 487, it was determined, that a devise in fee, by a mother to her daughter, who was her heir, would not make the daughter a purchaser so as to cast the descent from her upon the heir on the part of the father. In Beachcroft v. Beachcroft, a close in St. Peter’s, Derby, is devised to sir Robert (who was probably heir) without limitation; the reversion is never mentioned as having passed either to the wife, or to the brother Joseph, under the residuary devise. 1 ' ' . ¡ • ¡ 1 1
I was very attentive during the argument, to discover, if any cases were cited of a devise of lands to an heir without limitation, where the reversion was adjudged to pass to another under a residuary clause in the same will, however large and 1 comprehensive *the words might be; not recollecting any such, and inclining to believe from the feudal, reasoning and principles, favoring the'heir, that none such were to be found.
The gentleman of counsel for the appellee, (whose laborious researches on such occasions are pleasing to the court, as they generally impress an opinion, that what is not produced by him in favor of the side he advocates, does not exist,) very candidly acknowledged he could find no such case, except one in Fearne’s essay on contingent remainders page 170; and I believe that gentleman on reviewing this case, will think it not a sufficient foundation for an exception to his admission. In a subsequent page the author says “it sometimes happens, that a remainder is limited in words which seem to import a contingency; tho’ in fact they mean no more than would have been implied without them, or do not amount to a condition precedent, but denote the time when the remainder is to vest in possession..” This he illustrates by several cases to the page which was read by the counsel, and then, for the same purpose, he quotes the case of Fortescue v. Abbot from Pollexsen & sir Thomas Jones. A testator devises a house to each of his eldest sons, and three other children, without words of limitation, but willed, that if either of his said children should die, then the houses should be divided between those that were living.
The eldest son died, and it was contended that the limitation over, to the children then living, was a contingent remainder to the survivors; that the eldest son’s estate for life in the house was merged in the fee, which descended upon him as heir, and destroyed the contingent remainder. But it was adjudged not to be contingent but vested remainder; each child took a particular estate in the house : devised to him, with a vested remainder to ; the others for their lives. i
As this case applied to the author’s posi- ¡ tion, there was the appearance of a contin- < • gency in the words “if either of my children . die;” yet it being certain, that they i must die, there was really nothing contin-i gent in the event, and therefore it u as a
vested remainder on the death of a child. To the present case it does not apply at all, since there was an express remainder devised upon the death of the eldest, as well as of the other sons, which does not prove, that where there is a devise of lands to'the heir without words of limitation, the reversion in fee will pass to another, by a general residuary clause in the same will.
*In Peal v. Powell. Ambl. Rep. 387, tho’ there was an appearance of intention, that the eldest son should take the freehold lands, by his being directed to confirm the leasehold lands to Giles, yet there was no devise of any kind to the eldest son, to take those freehold lands out of the general devise of all the rest and residue of his estate real and personal.
In Urry &c. v. Harvey, 5 Burr. 2638 — the lands were not particularly devised to any person, and adjudged to pass to the wife by a devise of all the rest and residue of his estate whatsoever, and wheresoever: and Bd. Mansfield says “the word estate carries every thing, unless tied down by particular expressions.”
In the case before us, there is an express devise of the lands in question to the heir, without limiting the duration of his estáte, leaving it to the fee which the law cast upon him, which acts exclusively of this subject upon the words rest and residue of my estate, and ties them down to other estate, not disposed of in^ former parts of the will.
So much for what is particular in respect to the heir. — Bet us now
2dly, Enquire in general, whether in any case of lands devised without limitation, where only an estate for life shall be supposed to pass, the reversion in fee will pass by a general devise, of all the rest of the estate, real and personal.
The word rest is a relative term, and refers to the whole of a subject before contemplated by the testator. That subject here, was all the testator’s property, which the preamble shews, he placed in his view, in one collected mass of lands, slaves, stocks, &c. In his disposition he takes out for Robert two tracts of land, six slaves, and ten horses.
For Theoderick one tract of land, two slaves and the samé number of horses.
The rest to his wife and daughter — rather two considerable, and therefore, he excepts a young negro girl for Theoderick.— Strange that he should do so, and yet leave in it, the more valuable reversions of the three tracts of land given to the two sons.
: ; i ¡ < A plain man would understand this word rest, to mean, what remained of the mass of property undisposed of, and would never suppose it could reach what had been given to the sons, at any period, or on any event, since the testator had not appointed *435 any time, or any event, on which their rights were to cease.
*It is true, a testator might devise lands for years, or for life, and limit no particular remainder, and in that case, the reversion would pass in the residuary clause. Skinner 150. Allen 28. 2 Ventr. 285. 2 Vern. 461, 621. Eq. Ca. Ab. 211. 3 Atk. 486. In these cases, the testator, having given a limited estate, shews his intention, that on the termination of that estate, the land should return into the mass of his property, and making no further particular disposition of it, means it shall pass in the residue.
But in a general devise of lands without limitation, I will not say there is no case, but I have not met with one, which determines that the reversion will pass by a general residuary devise in the same will.
And the distinction is obvious — since by such a devise the testator means to give a fee, as the judges all agree, and therefore he could not intend to include it in the residue. If the devisee must lose the land upon the rule of law, it goes to the heir, for whose benefit the rule was made.
In Davis v. Saunders 2 Black. Rep. 736 and Cowp. 420, a devise to the eldest son and his wife for life, remainder to their eldest son and his heirs; if no male issue, to daughters and their heirs, and if they die without issue, to the testator’s right heirs. To his son in law Humphrey Davis, and his heirs he gives all his estate freehold and copy-hold, tenements and premises, not before devised, for payment of debts, and the surplus to be equally divided amongst his children; and then he devises all the residue and remainder of his estate real and personal to the said H. Davis. The eldest son and his wife died, and never had issue — The question was, if his reversion passed to H. Davis; and it was determined, that the devise, to right heirs, tho’ nugatory, excluded it from passing as part of the residuum, tho’ latent reversion might pass.
Strong, Clark, v. Mervyn 2 Burr. 912. Audly Mervyn seized in fee of lands in Tyrone, on the marriage of Henry his eldest son, settled those lands to the use of himself for life, remainder to Henry for life, remainder to the first and other sons of the marriage in the usual form, remainder to the right heirs of Audley the father.
The father seized of other lands by his will devised several parcels by specific descriptions in the counties of Tyrone and Meath, ‘ ‘and also all other the lands, tenements and hereditaments in the said counties of Tyrone and Meath, or either of them, whereof I am seized in fee simple, or of which any *olher persons seized in trust for me to his wife Olivia,” in trust for several purposes. Henry after-wards dying without issue, the question was, if the reversion in fee of the lands settled on him at his marriage, passed by the general residuary devise to the wife? Tt was determined in Ireland, that it did pass: but upon a writ of error, the whole court of King’s Bench in England decided that it did not. Among other reasons given by Ed. Mansfield, he says, “if the question had been between the issue male of Henry by a second wife, and the residuary devisee, could it possibly be imagined that the testator intended in such a case, that Henry’s sons by a second wife should be disinherited? and yet they must have been so, if the reversion of this settled estate passed by this devise.”
If it could not be imagined, that the testator there intended to disinherit remote, and barely possible, children, of his son by a second wife, when he had a first wife, living, whose chitdren were provided for, much less can it be imagined that the testator in this case intended to disinherit all the children of his sons by any wives by devising these reversions in this residuary clause; and what gives additional weight to the objection is, that we are all satisfied that the testator believed he had fully disposed of the land to his sons, and had no reversion to pass by the residuary clause.
If the law raises that reversion contrary to his intention, the law must dispose of it, since he has not, and give it to the heir at law. It might have had some weight (though but little) to prove these reversions included, if there had not been other lands undisposed of, to have satisfied the words real estate. See the reasoning of the court upon this point in the case of Knotsford v. Gardiner 2 Atk. 450. And if in that case it were thought, that the testator could not intend to mangle a tenement by separating the freehold from the leasehold, to give part to his wife from his only child who was a daughter: it would seem equally, or more strange, that this testator should mean to mangle the interest in these lands, to give the inheritance from his sons, to his wife and daughter. See 1 P. Wms. 286, where it is decided, that under a devise “of all his freehold lands,” if there be none, leasehold shall pass rather than defeat the will.
2 Bacon 92. 1 Rolls Ab. 613 — a man seized in fee of tenements, and possessed of a lease for years, and also of goods, devises two tenements to one of his sons, and the other to a daughter and adds, “I make my two sons executors of all my goods *moveable and immoveable, and all my lands,debts, dues and demands,”— determined, that no estate passed in the three tenements, (I suppose in the reversion,) because the words, all my lands,, might be satisfied with the leasehold lands.
The case, of a devise of lands to A in fee, and of all the residue of his real and personal estate to B and C.— is stated in Goodright v. Opie Cas. in E. and Eq. 123 and in Wright v. Horne (same Boob p. 222). A dies in the testator’s lifetime and the question was, if his lands passed to the residuarj' devisees, or descended to the heir? in both, the reasoning is strong for the heir, but neither is determined — it is strange, that in so plain a case it should not. Por if a nugatory limitation to the right heirs, *436 (nugatory, because it does what the law would do without it,) shall prevent that reversion from passing in the residue, much more shall an actual devise effectual at the time, but defeated by a subsequent accident prevent that land from passing in the residue.
Upon the whole, we think the law is with the appellant and therefore reverse the judgment of the District Court.